# RESTRICTED LIMITED APPRAISAL REPORT

Date of Valuation

MARCH 25, 2016

OWNER: CASSIE HERNANDEZ
3706 SHELDON PL
GROVE CITY, OH 43123

For

ATTORNEY JAY W MAYNARD
FOR UNITED STATES BANKRUPTCY COURT

## TABLE OF CONTENTS

Real Estate Value Estimate .................................................................................................................................................... 1
Subject Photos ........................................................................................................................................................................ 2
Comparable Photos 1-3 .......................................................................................................................................................... 3
Location Map .......................................................................................................................................................................... 4
Statement of Limiting Conditions ........................................................................................................................................... 5
Limited Appraisal Departure Disclosure ................................................................................................................................ 7

# REAL ESTATE VALUE ESTIMATE

## SUBJECT

- Contact: CASSIE HERNANDEZ
- Property Address: 3706 Sheldon Pl
- City: Grove City     County: FRANKLIN     State: OH     Zip Code: 43123
- Census Tract: 0097.11     Map Reference: M086D 06700
- Check one: ☒ SF   ☐ PUD   ☐ CONDO   ☐ 2-4 Units
- Phone No. Res.: N/A     Loan Amount: $ N/A     Term: N/A     Mos. Owner's Est. of Value: $ N/A

| No. of Rooms | No. of Bedrooms | No. of Baths | Family room or den | Gross Living Area | Garage/Carport (specify type & no.) | Porches, Patio or Pool (specify) | Central Air |
|---|---|---|---|---|---|---|---|
| 8 | 5 | 2 | ☒ Yes ☐ No | 1,732 Sq. Ft. | 2 CAR ATTCH | LANDING | ☒ Yes ☐ No |

## FIELD REPORT

### NEIGHBORHOOD

| | | | | | Good | Avg | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Built Up | ☒ Over 75% | ☐ 25% to 75% | ☐ Under 25% | General Appearance of Properties | ☐ | ☒ | ☐ | ☐ |
| Growth Rate | ☐ Fully Dev. ☐ Rapid | ☒ Steady | ☐ Slow | Appeal to Market | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☐ Increasing | ☒ Stable | ☐ Declining | | | | | |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | | | | | |
| Marketing Time | ☐ Under 3 Mos. | ☒ 4-6 Mos. | ☐ Over 6 Mos. | | | | | |

Present Land Use: 80% 1 Family   % 2-4 Family  10 % Apts.   % Condo  10% Commercial   % Industrial   % Vacant   %
Change in Present Land Use: ☒ Not Likely  ☐ Likely  ☐ Taking Place From ___ To ___
Predominant Occupancy: ☒ Owner  ☐ Tenant  0 % Vacant
S/F Price Range: $ 75,000 to $ 175,000   $ 125,000 = Predominant Value
S/Family Age: 20 yrs. to 112 yrs.  Predominant Age 50 yrs.

Comments including those factors affecting marketability (e.g. public parks, schools, view, noise): SOUTHWEST BLVD TO THE NORTH, COLUMBUS ST TO THE SOUTH, HOOVER RD TO THE EAST, BROADWAY TO THE WEST. LOCATED AMONG PROPERTIES WITH A VARIETY OF STYLES, VALUES AND APPEALS. AVERAGE ACCESS TO MAJOR ROADWAYS. I-71/270 10 MINUTES. SOUTHWESTERN LOCAL SCHOOLS. LOCAL SHOPPING, CHURCHES, PARKS & RECREATION.

### SUBJECT PROPERTY

- Approx. Yr. Blt. 19 81   # Units 1   # Stories 1.5
- Type (det, duplex, semi/det. etc.): DETACHED
- Design (rambler, split, etc.): CAPE COD
- Exterior Wall Mat.: VINYL     Roof Mat.: COMPOSITE ASPHL
- Is the property in a HUD-Identified Special Flood Haz. Area? ☒ No ☐ Yes
- Special Energy-Effic. Items: UNABLE TO VERIFY - APPRAISER UNABLE TO GAIN ENTRY. APPRAISER RESERVES THE RIGHT TO AMEND APPRAISAL IF INTERIOR INSPECTION IS WARRANTED.

| PROPERTY RATING | Good | Avg | Fair | Poor |
|---|---|---|---|---|
| Condition of Exterior | ☐ | ☒ | ☐ | ☐ |
| Compatibility to Neighborhood | ☐ | ☒ | ☐ | ☐ |
| Appeal and Marketability | ☐ | ☒ | ☐ | ☐ |

Comments (favorable or unfavorable incl. deferred maintenance): AVERAGE EXTERIOR CONDITION. ROOF & GUTTERS APPEAR TO BE FUNCTIONAL. PURPOSE OF THIS APPRAISAL IS TO ESTIMATE MARKET VALUE. HIGHEST AND BEST USE SINGLE FAMILY RESIDENTIAL. EXTERIOR INSPECTION ONLY. INTERIOR BELIEVED TO BE CONSISTENT WITH EXTERIOR.

## MARKET COMPARABLE ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3706 Sheldon Pl, Grove City, OH 43123 | 3012 Louise Ave, Grove City, OH 43123 | | 2990 Terry Ln, Grove City, OH 43123 | | 3788 Richard Ave, Grove City, OH 43123 | |
| Proximity to Sub. | N/A | 0.06 miles SE | | 0.12 miles SE | | 0.19 miles SE | |
| Sales Price | $ N/A | $ 122,500 | | $ 119,500 | | $ 112,000 | |
| | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Date of Sale and Time Adjustment | N/A | 02/04/2016 | | 12/21/2015 | | 07/02/2015 | |
| Location | JACKSON HOMES | JACKSON HOMES | | JACKSON HOMES | | JACKSON HOMES | |
| Site/View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Age | 60 | 60 | | 60 | | 60 | |
| Condition | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Living Area Rm. Count and Total | Total 8 / B-rms. 5 / Baths 2 | Total 6 / B-rms. 3 / Baths 1.5 | +1,500 +6,000 | Total 6 / B-rms. 4 / Baths 2 | +3,000 | Total 5 / B-rms. 3 / Baths 1 | +3,000 +6,000 |
| Gross Living Area | 1,732 Sq. Ft. | 1,258 Sq. Ft. | +2,370 | 1,270 Sq. Ft. | +2,310 | 1,482 Sq. Ft. | +1,250 |
| Air Conditioning | YES | YES | | YES | | YES | |
| Garage/Carport | 2 CAR ATTACH | N/A | +2,000 | 1 CAR ATTACH | +1,000 | 1 CAR DETACH | +1,000 |
| Porches, Patio, Pools, etc. | LANDING REAR PORCH/SHED | LANDING PATIO | −1,000 | LANDING PATIO | −1,000 | ENC PORCH DECK | −1,000 −1,000 |
| Special Energy-Efficient Items | INSL WINDOWS | INSL WINDOWS | | INSL WINDOWS | | INSL WINDOWS | |
| Other | NO BASEMENT | NO BASEMENT | | NO BASEMENT | | NO BASEMENT | |
| Net Adjust (Total) | | ☒ + ☐ − | $ 10,870 | ☒ + ☐ − | $ 5,310 | ☒ + ☐ − | $ 9,250 |
| Indicated Value Sub. | | | $ 133,370 | | $ 124,810 | | $ 121,250 |

General Comments: FOR BANKRUPTCY COURT USE ONLY. DATA SOURCES REALQUEST AND PUBLIC RECORDS. SALES COMPARISON APPROACH USED IN THE FINAL ANALYSIS.

Estimated Value $ 126,500   as of MARCH 25, 2016

Completed By: JAMES SMOOT     Title: APPRAISER
Signature: /s/ James Smoot     Date: April 04, 2016

[Y2K]

## Subject Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | CASSIE HERNANDEZ | | | | |
| Property Address | 3706 Sheldon Pl | | | | |
| City | Grove City | County | FRANKLIN | State OH | Zip Code 43123 |
| Lender | ATTORNEY JAY W MAYNARD | | | | |



**Subject Front**

3706 Sheldon Pl
Sales Price            N/A
Gross Living Area      1,732
Total Rooms            8
Total Bedrooms         5
Total Bathrooms        2
Location               JACKSON HOMES
View                   RESIDENTIAL
Site
Quality
Age                    60



**Subject Rear**



**Subject Street**

Form PICPIX.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Comparable Photo Page

| Borrower/Client | CASSIE HERNANDEZ | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3706 Sheldon Pl | | | | | |
| City | Grove City | County | FRANKLIN | State | OH | Zip Code 43123 |
| Lender | ATTORNEY JAY W MAYNARD | | | | | |



### Comparable 1
3012 Louise Ave
Prox. to Subject  0.06 miles SE
Sale Price  122,500
Gross Living Area  1,258
Total Rooms  6
Total Bedrooms  3
Total Bathrooms  1.5
Location  JACKSON HOMES
View  RESIDENTIAL
Site
Quality
Age  60



### Comparable 2
2990 Terry Ln
Prox. to Subject  0.12 miles SE
Sale Price  119,500
Gross Living Area  1,270
Total Rooms  6
Total Bedrooms  4
Total Bathrooms  2
Location  JACKSON HOMES
View  RESIDENTIAL
Site
Quality
Age  60



### Comparable 3
3788 Richard Ave
Prox. to Subject  0.19 miles SE
Sale Price  112,000
Gross Living Area  1,482
Total Rooms  5
Total Bedrooms  3
Total Bathrooms  1
Location  JACKSON HOMES
View  RESIDENTIAL
Site
Quality
Age  60

### Location Map

| Borrower/Client | CASSIE HERNANDEZ | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3706 Sheldon Pl | | | | | |
| City | Grove City | County | FRANKLIN | State | OH | Zip Code 43123 |
| Lender | ATTORNEY JAY W MAYNARD | | | | | |



**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Freddie Mac Form 439 6-93                              Page 1 of 2                              Fannie Mae Form 1004B 6-93
www.jsandassociatesappraisal.com
Form ACR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**APPRAISER'S CERTIFICATION:**   The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**   If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:**   3706 Sheldon Pl, Grove City, OH 43123

**APPRAISER:**

Signature: _(signed)_
Name: JAMES SMOOT
Date Signed: April 04, 2016
State Certification #: _____
or State License #: 2002018172
State: OHIO
Expiration Date of Certification or License: 10/16/2016

**SUPERVISORY APPRAISER (only if required):**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____

☐ Did      ☐ Did Not Inspect Property

## LIMITED APPRAISAL DEPARTURE DISCLOSURE

This report is a Limited Appraisal made according to the binding and specific requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) as promulgated by the Appraisal Standards Board of the Appraisal Foundation. The Departure Rule permits departures from some sections of the USPAP that are classified as guidelines. USPAP places the burden of proof on the appraiser to decide before accepting an assignment which calls for something less than, or different from, the work that would otherwise be required by USPAP guidelines, and to determine that the appraisal process is not so limited that the results of the assignment are no longer credible. The appraiser must advise the client that a limited appraisal assignment may not be as reliable as a complete appraisal, and that the report must clearly identify and explain the departures. The client must agree that the performance of a limited appraisal service would be appropriate, given the intended use.

☒ I am satisfied that the appraisal I performed is not so limited that the results of the assignment will tend to mislead or confuse the client or any other disclosed intended users of the report. I have indicated below those specific sections of the USPAP from which I have departed. I have prominently disclosed in the appraisal report that this is a limited appraisal and that I have not performed all of the items of the appraisal process for a complete appraisal, and that a limited appraisal may be less reliable than a complete appraisal.

☐ **Standards Rule 1-3 (a)** "identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations, economic supply and demand, the physical adaptability of the real estate, and market area trends;"

Departure: _____
Explanation: _____

☐ **Standards Rule 1-3 (b)** "develop an opinion of the highest and best use of the real estate."

Departure: _____
Explanation: _____

☐ **Standards Rule 1-4 (a)** "When a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion."

Departure: _____
Explanation: _____

☒ **Standards Rule 1-4 (b)** "When a cost approach is applicable, an appraiser must: (i) develop an opinion of site value by an appropriate appraisal method or technique; (ii) analyze such comparable cost data as are available to estimate the cost new of the improvements (if any); and (iii) analyze such comparable data as are available to estimate the difference between the cost new and the present worth of the improvements (accrued depreciation)."

Departure: COST APPROACH NOT USED OR CONSIDERED
Explanation: CHAPTER 13 BANKRUPTCY

☒ **Standards Rule 1-4 (c)** "When an income approach is applicable, an appraiser must: (i) analyze such comparable rental data as are available and/or the potential earnings capacity of the property to estimate the gross income potential of the property; (ii) analyze such comparable operating expense data as are available to estimate the operating expenses of the property; (iii) analyze such comparable data as are available to estimate rates of capitalization and/or rates of discount; and (iv) base projections of future rent and/or income potential and expenses on reasonably clear and appropriate evidence."

Departure: INCOME APPROACH NOT USED OR CONSIDERED
Explanation: CHAPTER 13 BANKRUPTCY

☐ **Standards Rule 1-4 (d)** "When developing an opinion of the value of a leased fee estate or a leasehold estate, an appraiser must analyze the effect on value, if any, of the terms and conditions of the lease(s)."

Departure: _____
Explanation: _____

☐ **Standards Rule 1-4 (e)** "An appraiser must analyze the effect on value, if any, of the assemblage of the various estates or component parts of a property and refrain from valuing the whole solely by adding together the individual values of the various estates or component parts."

Departure: _____
Explanation: _____

☐ **Standards Rule 1-4 (f)** "An appraiser must analyze the effect on value, if any, of anticipated public or private improvements, located on or off the site, to the extent that market actions reflect such anticipated improvements as of the effective appraisal date."

Departure: _____
Explanation: _____

☐ **Standards Rule 1-4 (g)** "An appraiser must analyze the effect on value of any personal property, trade fixtures, or intangible items that are not real property but are included in the appraisal."

Departure: _____
Explanation: _____

☐ **Standards Rule 1-4 (h)** "When appraising proposed improvements, an appraiser must examine and have available for future examination: (i) plans, specifications, or other documentation sufficient to identify the scope and character of the proposed improvements; (ii) evidence indicating the probable time of completion of the proposed improvements; and (iii) reasonably clear and appropriate evidence supporting development costs, anticipated earnings, occupancy projections, and the anticipated competition at the time of completion."

Departure: _____
Explanation: _____

Additional Explanations: